O’Neall, J.,
delivered the opinion of the Court.
The questions which first present themselves in the consideration of this cause are, 1st, whether the testimony of Joseph T. Weyman was competent for the assignee, West; and 2nd, whether the declarations of Monefeldt, proved by the witnesses, Star, and Magrath, were competent evidence.
*500 Upon the first question there is no division of opinion; the learned Chancellor, who pronounced the decree, agreeing- that he was mistaken in excluding Weyman’s deposition. Jt is only necessary, therefore, to state the rule, and the exception, under which, we think, his testimony ought to have been received.'
Thc 0p exciusi0I1 0[ a -witness on account of interest, instead of being extended, has been very much narrowed by modem decisions. The general inclination of Courts at present is to apply the objection of interest to the credit, rather than to the competency of .a witness. The interest to exeludo a witness must be -a certain, and direct, pecuniary interest, in the event of the cause, in favor of tlio party offering him as a witness; or a certain and direct interest in the record, as evidence, for, or against him. This is the general rule applicable to all cases. But if the interest of a witness is equal between the parties, so that he must be equally a gainer, or loser, let either party succeed, he is without pecuniary interest in the event of the suit. For he will he neither better, nor worse, in any event of the case. This appears to me to be exactly the case with Weyman. If his assignee succeeds, the recovery will diminish the amount of his debts to his creditors, who are intitled to be paid under the assignment, hut leave his debt to Martin undiminished; and if Martin succeeds, his recovery will be a satisfaction, to the same extent, of the debt to him, but leave the creditors debts under the assignment undiminished. So that let the recovery be as it may, Weyman, can have no pecuniary benefit from it; for the fund in dispute is applicable to the payment of his debts, and apply it to either of the parties claiming-, and it will leave Weyman in precisely the same situation, debtor to one, or the other, in the same sum, so far as this fund is concerned. He was therefore a competent witness.
The second question is not free from doubt, not so much arising out of the decision of the question itself, as from the difficulty of perceiving the reason, on which many of the English cases have proceeded, and of fixing upon any thing like a rule which they have established. The Chancellor supposes the rule to be, that the entries, or declarations, of a deceased person against his own interest, and charging himself, are evidence in all cases against third persons. To the rule thus broadly laid down, I cannot give my assent. There are classes of cases in which it would apply: ’ there are others in which it has no application. In the cases where it does apply, it is subject to qualification. In all cases where hearsay is admissible from the antiquity of the dispute, and therefore stands upon the footing of necessity, as in cases of-customs, pedigree, boundary, and possibly prescription, it would be admissible as furnishing the best evidence in the power of *501 the party. It has however, it must he confessed, been received in •other cases, as in Price v. Lord Torrington, 1 Salk. 285, where it .appeared, that in the usual course of the plaintiff's dealings, his dray-men came every night to the clerk of the brow house, and gave him an account of the beer delivered out by them, which he set down in a book kept by him, and the draymen signed it. The drayman who .signed the entry was dead, but his handwriting was proved, and the entry was held to be proof of the delivery of the beer. Mr. Phillips, in his treatise on evidence, 1 vol. p. 196, (marginal page, 211,) ■has given some very sensible reasons, both to doubt the authority of this case, and to prevent its extension beyond the case itself. I will however add to his reasons, that that case was probably decided upon .the necessity of the case, in favor of trade, and as falling within the reason on which the books of merchants and shopkeepers .are considered as evidence of delivery. The drayman may be regarded as the clerk who delivers the goods, and makes the entry; and in such a case, proof of his death and handwriting would intitle the entry to credit.
In Barry v. Bebbington, 4 T. R. 514, the issue was, whether the waste, or common, was the soil and freehold of the defendant. The plaintiff proposed to give in evidence entries of sums of money received by one Ashley, who had been steward to Lord Barrymore, .under whom the plaintiff claimed title, for trespasses committed by .several persons on the waste. The case was tried in 1792, and one of the entries was in 1739, and the last in 1785. Ashley was dead, .and upon his handwriting being proved, the entries were held to be •competent evidence, on the authority of Warren v. Greenville, 2 Str. 1129. That case is noticed by Lord Mansfield in Brydges v. Duke of Chandos, 2 Bur. 1072. It appears that the question in Warren v. Greenville was, whether the surrender of a life estate, which was ■necessary to make out the title, ought to be presumed after great length of time. -The attorney who had been concerned in the surrender had been long dead, the entry in his bill book had been made at the time of the transaction, and a receipt had beeii given upon the bill for “drawing and engrossing the surrender;” and it was held to be evidence.
From these cases I deduce the following principle: that in ancient, and remote transactions, an entry, made by a party, having no interest in the issue before the Court, and against his interest in the matter of the entry, may, if he be dead, be given in evidence, as a circumstance in aid of the title of the party offering it. In the case of Barry v. Bebbington, it was to prove a recognition of title, or rather possession, in Lord Barrymore, of the common in question, as.far back as 1739, fifty-three years before the trial. It *502 rna^ P£‘r^iaPs fai>lfC<l as a casedepending very much on a right of common, which arises often by prescription from use beyond the memory of man, and in which such evidence is admissible on the broad principle, that such a right may be proved by hearsay. But here the admissibility of the evidence will be more intelligibly defended, by putting it on the footing of the declaration of a person in possession, acknowledging the title to be in another: and such declaration is admitted as part of the res gesta, giving character to the possession. In Warren v. Greenville, it was allowed in aid of a legal presumption ; and any thing in such a case which goes either to fortify, or rebut it, may be given in evidence.
The next case which it is important to notice, is that of Higham v. Ridgway, 10 East, 109. The question in that case was as to the time of the birth of William Fowden, Jun. The case was tried in 1808, and he was bom in 1768. It was held, that the books of the man-midwife, who was dead, containing a charge for his attendance on the mother of William Fowden, Jun., at the time of his birth, and which was marked paid, on being proved to be in his handwriting, were admissible in evidence. It will be observed, on looking into that case, that the book was received only as a corroborating circumstance to the other testimony establishing his birth on the day set down in the entry. Lord Ellenborough said, “that the books would be evidence in themselves, as recording this event of the birth, and other similar events, in the course of his attendance on his patients, at the several times they took place, I am by no means prepared to say.” 10 East, 117. Le Blanc, J., in his opinion puts the question on I think the true ground, the necessity of receiving less evidence as to a remote transaction. He says, “ on inquiring into the truth of facts which happened a long timo ago, the Courts have varied from the strict rules of evidence applicable to facts of the same description happening in modern times, because of the difficulty or impossibility, by lapse of time, of proving those facts in the ordinary way, by living witnesses. On this ground, hearsay, and reputation, (which latter is no other than the hearsay of those who may be supposed to have been acquainted with the fact handed down horn one to another,) have been admitted as evidence in particular cases. On that principle stands the evidence, in cases of pedigree, of declarations of the family who are dead, or of monumental inscriptions, or of entries made by them in family bibles. The like evidence has been admitted in other cases, where the Court were satisfied that the person whose written entry, or hearsay, was offered in evidence, had no interest in falsifying the fact, but on the contrary had an interest against his declaration, or entry, as in the case of receiver’s books.” Ib. 120. *503 This case establishes as a rale, that in the case of a birth having taken place at Some remote period, the entry of a deceased person having no interest to establish the fact, and against his interest in the subject matter of the entry, maybe given in evidence, to corroborate, or repel, a conclusion to be drawn from other testimony as to the fact.
The last case which it appears to me to be important to notice, is that of Haddow v. Parry, 3 Taunt. 303, in which it was held by Lawrence, J., that a bill of lading signed by the master of a vessel, since deceased, for goods to be delivered to a consignee, he paying freight, is admissible as evidence of the consignee’s right of property against third persons. In this principle I fully - concur, but not for the reason that the master would be liable under it to the consignee; but because it .shews that his possession was for the consignee, and is therefore prima facie evidence of property. It is the declaration, of one having actual possession, that he holds for another. This makes it admissible as giving' character to the possession; and of course fixes prima facie the right of property.
From this review of the cases, I come to the conclusion, that before an entry, or declaration, can be received in any case, it must appear, first to have been made without any interest to falsify the fact; second in cases, other than those depending on hearsay, such as pedigree, custom, boundary, and perhaps prescription, that it was made against the interest of the party in the subject matter of the entry, or declaration; and third that the entry, or declaration, itselfj unless where it is made by a tenant in possession, should be so ancient as to preclude all suspicion, that it was manufactured for the occasion. And the cases in which entries, or declarations, are generally admissible, are, first, in aid of, or to repel, alega! presumption from lapse of time; second, to give character to an ancient possession, or to make out an ancient title; third, to corroborate, or to repel, a conclusion arising from other testimony, as to a long past event, or fact; and fourth, to give character to an actual recent possession, and thereby shew a right of property in a third person.
IJVlonefeldt’s.declarations must be admitted, or rejected, under these rules. It is manifest, that he had a direct interest to sustain Martin in this recovery; for if, as the Chancellor truly supposes, he was liable to Lothrop, and Lothrop to Martin, for the loss of the 108 bales of cotton, his interest is clear to defeat West’s recovery, and to sustain Martin’s. If Martin recovers the cotton, he is satisfied, and Lothrop’s liability to him is ended, and, of course, Monefeldt’s to Lothrop. He had therefore an interest to falsify the fact; and although his declaration had the effect, first to charge him- to Martin, through his employer Lothrop, yet it had also the effect to discharge him, by *504 estabbsbin'S‘ Martin’s right of property. To these conclusive reasons" against his declaration being evidence, must be added the fact, that it-was made, after it was discovered, that 108 bales of the cargo of the-Commerce were missing, and that his liability, whatever it was, had1 already attached/
jj ¿0 beiieve a case can be found where a.declaration, or entry, unaccompanied by actual possession at the time, was ever held to he, in itself, evidence of title in a third person. Still more difficult will it he to find any case, which will permit the declarations of a third person to defeat a vested right in another; In Phœnix v. Assignees of Ingraham, 5 Johns. 412, it was held, that they could not have this effect. /At the time when Monefeldt’s declarations were made, Weyman had assigned the cotton in dispute to West; and his right could not he therefore affected by any thing which Monefeldt could say, or do. If at the time Monefeldt made the declaration, he had been in the actual possession of the cotton, it might have been evidence, that' he then held possession for Martin; and this would have put the party claiming to shew a legal title to the property. But his declaration, that, some months before, he had been authorized to do- an aet, which? would have changed the property from Weyman- to Martin, cannot he any evidence./ I come therefore to the conclusion, that the testimony of Starr, and Mag-rath, as to Monefeldt’s declarations, was in-competent, and ought to have been rejected.
Excluding this testimony from the case, the transfer of 329 hales, the cargo of the Commerce, according to the testimony of George Kerr, was made on the 20th of June, after the 108 bales had been taken away by Weyman; so that it could only transfer 221 bales of that cargo then instore. The 102 bales of the cargo of the Herald not being transferred, and there being no ground to presume, that they were intended by Weyman to he substituted for that part of the cargo of the Commerce, which he had- taken away, we should not be authorized to sustain the decree in favor of Martin; more especially when Weyman’s testimony, which was excluded by the Chancellor, ought to he thrown into the scale against the claim. But as it may be, that other facts exist, which have not been presented to the Court,- and which may sustain Martin’s claim, he may, if he choose, submit the question of fact to a jury, on an issue to be ordered by the Chancellor.
It is necessary to notice the effect of the recovery in the action of trover by Martin against Lothrop. To that case it is said the defendant, West, made himself a party, by the agreement, to sell the cotton* and invest the proceeds in bank stock, and to abide the event of the cause, and any ftirther order thereon. But the recovery in that case merely *505 fixed Martin’s right of property in the 108 bales, as against Lothrop; which question, it may be admitted, this defendant, West, could not now agitate. It is to he remembered, however, that the writ in trover was a writ of foreign attachment, and levied on the 102 bales of cotton, as the property of Samuel H. Lothrop; and I do not perceive, that any order, condemning them as the property of the absent debtor, has been made, or that the question, whether they belonged to him, or to West, or Martin, was in any shape tried. It might have been tried on a suggestion at the instance of West, laying claim to them; but the question could not legally arise in the action of trover between Martin, and Lothrop: and it follows that the recovery cannot now conclude the parties from making it.
It is therefore ordered, and decreed, that Chancellor Harper’s decree be reversed, and the cause remanded to the Circuit Court for trial; and that the defendant, Martin, have leave to move that Court, if he choose so to do, for an issue to try the right of property to the 102 bales of coltoii now in dispute.
Johnson, J., concurred.

Decree reversed.